UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

vs.                 REPORT AND RECOMMENDATION

Chad Wayne Reynolds,

        Defendant.     Crim. No. 09-18 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Suppress Statements, Admissions, and Answers.

A Hearing on the Motion was conducted on February 17, 2009, at which time, the Defendant appeared personally, and by Lyonel Norris, Assistant Federal Defender, and the Government appeared by Leshia M. Lee-Dixon, Assistant United States Attorney. For reasons which follow, we recommend that the Defendant's Motion to Suppress be denied.

II. Factual and Procedural Background

In a one (1) Count Indictment, the Defendant is charged with Assault Resulting in Serious Bodily Injury, in violation of Title 18 U.S.C. §§113(a)(6), 1151, and 1153(a), occurring within this State and District, on or around October 25, 2008. As pertinent to those charges, and to the Defendant's Motion to Suppress, the operative facts may be briefly summarized.[1]

At the time of the Hearing, the Government called Mark Underhill ("Underhill"), who is a patrol officer with the Red Lake Police Department ("RLPD"), to testify. Underhill testified that, in the early morning hours of October 27, 2008, after the RLPD began investigating the Defendant for a suspected assault, the RLPD dispatcher received a telephone call from Terra Spears ("Spears"), who advised that she was driving the Defendant from Bemidji, Minnesota, to the RLPD, because the

---

[1] Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

Defendant wished to turn himself into law enforcement. At approximately 3:40 o'clock a.m., Underhill met Spears and the Defendant in Spears' vehicle, in the parking lot of the RLPD. Underhill testified that, prior to October 27, 2008, he knew the Defendant's birthdate, although he was not familiar with the Defendant's appearance. Underhill spoke with the Defendant, who confirmed his name and birthdate, and then Underhill asked the Defendant to step out of the vehicle. The Defendant complied, and Underhill immediately placed him under arrest, by handcuffing the Defendant, and administering a Miranda warning from memory. See, Miranda v. Arizona, 384 U.S. 436 (1966). According to Underhill, the Defendant did not make any statements during the course of his arrest.

Underhill then placed the Defendant in his squad car, and drove him from the RLPD parking lot to the Red Lake Detention Center ("Detention Center"). Underhill testified that, although the RLPD and the Detention Center are adjacent, connecting buildings, they have separate parking lots, and it took only a few minutes to transport the Defendant to the Detention Center. According to Underhill, the Defendant did not make any statements during that transport.

Underhill then escorted the Defendant into the Detention Center, and he again administered a Miranda warning from memory. According to Underhill, the

Defendant stated that he understood his rights. Within approximately five (5) minutes, the Defendant was placed in a holding cell. According to Underhill, the Defendant did not make any statements while being booked into the Detention Center.

Immediately thereafter, at approximately 3:56 o'clock a.m., Underhill and Juan Lopez ("Lopez"), who is another RLPD officer, conducted an interview of the Defendant. Underhill testified that he first read aloud a Miranda Rights Warning and Waiver Form to the Defendant, and the Defendant signed the form, to indicate that he understood his rights. See, Government Exhibit 1.[2] The Defendant then signed the form a second time, in order to waive his Miranda rights, and to indicate that he was "willing to answer questions without a lawyer present." Id. Lopez then signed the form as a witness. Id. Underhill attested that he was present when both the Defendant and Lopez signed the form, and when the Defendant informed the officers that he wanted to provide a statement. Underhill denied coercing the Defendant's statement in any way, and he attested that neither he, nor Lopez, were armed during the course of the interview.

---

[2] At the Hearing, the Miranda Rights Warning and Waiver Form was admitted into evidence, without objection. See, Government Exhibit 1. Underhill attested that he administered three (3) Miranda warnings, because the RLPD procedure calls for a Miranda warning upon arrest, upon booking, and upon any interview.

Underhill and Lopez then interviewed the Defendant for approximately fifty (50) to fifty-five (55) minutes, with the Defendant responding to Underhill's questions. Underhill specifically attested that the Defendant never asked to stop the interview, nor did he ever ask for an attorney. Underhill averred that he remained in the presence of the Defendant, from their initial encounter in the parking lot, through the course of the interview, with the exception of approximately three (3) minutes, when he retrieved a camera from his squad car, in order to take photographs of the Defendant's injuries.

Underhill attested that he did not notice anything unusual about the Defendant during the course of their interaction, nor did he have any concerns about the Defendant's ability to communicate with the officers, or about the Defendant's ability to understand them. He further attested that he did not detect any odor of alcohol on the Defendant, nor any other evidence of intoxication. In addition, Underhill testified that he did not have any reason to conclude that the Defendant was too fatigued to understand the circumstances of his arrest and interview, despite the time of his surrender, in the early morning hours of October 27, 2008.

The Government next adduced the testimony of Michael J. Iverson ("Iverson"), who is a Special Agent with the Federal Bureau of Investigation ("FBI"), and who is

responsible for investigating violent crimes on the Red Lake Reservation. According to Iverson, on January 21, 2009, a Federal Arrest Warrant was issued for the Defendant and, at approximately 8:00 o'clock a.m., Iverson and Timothy D. Ball ("Ball"), who is also a Special Agent with the FBI, traveled to the Red Lake Detention Center and arrested the Defendant, in order to transport him to Bemidji, Minnesota, for an Initial Appearance in Federal Court.

During the course of that transport, Iverson interviewed the Defendant. First, at approximately 8:15 o'clock a.m., Iverson read aloud an Advice of Rights Form, in order to advise the Defendant of his <u>Miranda</u> rights. See, <u>Government Exhibit 2</u>.[3] Iverson testified that he sat in the front seat of the FBI vehicle, while the Defendant was seated in the backseat, behind a clear fiberglass partition. The Defendant was wearing a seatbelt, and his hands were cuffed in front of him. Because of the partition, the Defendant was not able to sign the Advice of Rights Form immediately. However, Iverson asked the Defendant if he wanted to tell them "his side of the story," and the Defendant then provided a statement. Iverson attested that the

---

[3]At the Hearing, the Advice of Rights Form was admitted into evidence, without objection. See, <u>Government Exhibit 2</u>.

conversation was open-ended, rather than the Defendant responding to a series of questions.

According to Iverson, the interview lasted approximately fifteen (15) minutes, out of a thirty (30) minute drive. During the interview, Iverson turned sideways in his seat, in order to observe the Defendant, and Iverson testified that the partition is not soundproof, and that it did not impact upon his ability to hear the Defendant, or vice versa. On that date, Iverson was wearing a firearm, and that Ball was likely armed too, but Iverson testified that their weapons were not visible. Iverson testified that the Defendant never asked to stop the interview, nor did he ever ask for a lawyer.

Thereafter, at approximately 8:54 o'clock a.m., Iverson, Ball, and the Defendant, arrived in Bemidji, and the Defendant signed the Advice of Rights Form, in order to reflect that he understood his rights, and that he was "willing to answer questions without a lawyer present." See, Government Exhibit 2. Ball and Iverson also signed the Advice of Rights Form, as witnesses to the Defendant's signature. Id. Iverson remained in the presence of the Defendant during the course of his Initial Appearance, and he attested that the Defendant made no further statements. Iverson further attested that he had no concerns about the Defendant's ability to communicate,

during the course of his arrest and interview, and he has had no further contact with the Defendant.

### III. Discussion

A.   Standard of Review.   We understand the Defendant to argue that the statements, which he provided on October 27, 2008, and January 21, 2009, were not voluntary, and were made without the assistance of counsel. See, Docket No. 25. Here, all agree that, at the time that the Defendant's statements were taken on October 27, 2008, and on January 21, 2009, the Defendant was in official custody, which requires the administration of a Miranda warning if the statement is to be admissible in the Government's case-in-chief. See, Thai v. Mapes, 412 F.3d 970, 976 (8th Cir. 2005), cert. denied, 546 U.S. 1039 (2005) ("In Miranda, the Court held that police officers must inform a suspect of his Fifth Amendment privilege against self-incrimination prior to initiating a custodial interrogation.").

"A suspect may then waive th[o]se rights provided that the waiver is knowing, voluntary, and intelligent." Id. at 977, citing Miranda v. Arizona, supra at 444. "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product

of the suspect's free and deliberate choice, and not the product of intimation, coercion, or deception." United States v. Bell, 477 F.3d 607, 612 (8th Cir. 2007), quoting Thai v. Mapes, supra at 977.

Of course, "[a] statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne." United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 3044 (2007). As the Supreme Court has recently explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).] See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945)("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant"). The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Dickerson v. United States, 530 U.S. 428, 434 (2000).

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507

U.S. 680, 693 (1993); any elements of "police coercion," see, Colorado v. Connelly, 479 U.S. 157, 167 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367 U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, Leyra v. Denno, 347 U.S. 556, 561 (1954). See also, Withrow v. Williams, supra at 693 (listing the applicable considerations).

Lastly, "[t]he government has the burden of proving by a preponderance of the evidence that, under the particular facts and circumstances of the case, the waiver was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a know right or privilege." United States v. Black Bear, 422 F.3d 658, 663 (8th Cir. 2005), citing United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004)[en banc], cert. denied, 543 U.S. 1145 (2005).

B.   Legal Analysis. Notably, the Defendant has not detailed any specific objections to the statements given, apart from generally arguing that his statements were not voluntary, and were given without the benefit of counsel.

As noted, the parties do not dispute that the Defendant was in custody when he gave his statement on October 27, 2008, and that, therefore, the law enforcement officers had an obligation to provide a Miranda warning prior to questioning him.

- 10 -

Although the Defendant claims that the statement, that he gave to Underhill and Lopez, was not voluntary, and was taken without the benefit of counsel, Underhill's testimony establishes that the Defendant was provided with three (3) Miranda warnings, and the Defendant agreed to speak with the law enforcement officers, as reflected by his signatures on the Miranda Rights Warning and Waiver Form. See, United States v. Gallardo, 495 F.3d 982, 991 (8th Cir. 2007)("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver * * * ."), quoting North Carolina v. Butler, 441 U.S. 369, 373 (1979). We find Underhill's testimony to be believable in all respects.

The only factor which supports the Defendant's claim, that his statement was not voluntary, is that the interview occurred at the Detention Center. The other factors weigh heavily against a finding that the Defendant's statement was involuntary. Underhill and Lopez were not armed, they did not use coercive tactics, and the length and continuous nature of the interrogation did not overcome the Defendant's free will. Indeed, the Defendant's interview lasted less than one (1) hour, and Underhill specifically testified that he did not observe any signs of intoxication, or fatigue, nor did he have any concerns about the Defendant's ability to understand the officers, or

to communicate with them. In addition, the Defendant voluntarily surrendered himself to law enforcement, which also weighs in favor of a finding of voluntariness. In sum, we find that the statement on October 27 was voluntarily given. See, <u>United States v. Mims</u>, 567 F. Supp.2d 1059, 1079-1081 (D. Minn. 2008)(concluding that the defendant voluntarily submitted to a post-arrest interview, notwithstanding his unsupported claim of hunger and fatigue, where there was no evidence of coercion, the defendant verbally waived his <u>Miranda</u> rights, and the interview lasted only fifty-two (52) minutes).

The same is true of the Defendant's statement on January 21, 2009. Again, there is no dispute that the Defendant was in custody on January 21, and that he was entitled to the administration of a <u>Miranda</u> warning, if the statement was to be admissible in the Government's case-in-chief. See, <u>Thai v. Mapes</u>, supra at 976. Here, Iverson's testimony establishes that the Defendant was apprised of his <u>Miranda</u> rights prior to the interview, and he chose to waive those rights by providing a statement to the officers.

Although the Defendant did not immediately sign the Advice of Rights Form, owing to the partition in the FBI vehicle, that does not preclude a finding of voluntariness, as there is no requirement that <u>Miranda</u> rights be waived in writing.

See, Thai v. Mapes, supra at 977 ("[T]he Supreme Court has recognized implied waiver of Miranda rights."), citing North Carolina v. Butler, supra at 373, 375-76 ("[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent."); United States v. House, 939 F.2d 659, 662-63 (8th Cir. 1991)("[W]aiver may be inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights."); United States v. Mandujano, 2003 WL 22076577 at *4 (D. Minn., August 22, 2003)("Waiver can be inferred by conduct, and a willingness to answer questions after acknowledging Miranda rights is sufficient to constitute an implied waiver."); see also, United States v. Medley, 2006 WL 3247200 at *9 (E.D. Mo., November 8, 2006), adopted, 2007 WL 45786 (E.D. Mo., January 5, 2007) (observing that, although the search was conducted after the defendant provided oral consent, but before the defendant provided written consent, "[i]t really makes no difference when the form was actually signed" because, "[e]ven [if] a defendant refused to sign a waiver but indicated his willingness to tell his side of the story, the waiver was valid."), citing United States v. Yazzie, 188 F.3d 1178, 1193 (10th Cir. 1999), and Mincey v. Head, 206 F.3d 1106, 1131-32 (11th Cir. 2000). Here, Iverson's testimony establishes that the Defendant was advised of his rights, and nonetheless, the

- 13 -

Defendant chose to provide a statement, during the transport to Bemidji. As a result, we find that the Defendant knowingly and voluntarily waived his <u>Miranda</u> rights through his conduct. We also find Iverson's testimony to be entirely believable.

As a result, the only factor that supports the Defendant's argument, that his statement on January 21 was involuntary, was that, once again, his interview occurred while he was being transported in an FBI vehicle. However, the remaining facts and circumstances weigh heavily in favor of the conclusion that the Defendant's waiver was voluntary. The Defendant received and waived his <u>Miranda</u> rights. There is no evidence that Iverson or Ball used coercion, or promises, in order to secure the Defendant's cooperation, and Iverson testified that he had no reason to believe that the Defendant had difficulty understanding or communicating, during the course of the interview. The interview was short in length -- approximately fifteen (15) minutes -- which also favors a finding that the Defendant's statement was voluntary. When all the circumstances are considered, we find that the Defendant's will was not overborne and his statements were given voluntarily, and of his own free will.

Nor can we agree with the Defendant's assertion, that his Sixth Amendment right was violated, on either October 27, or January 21, because he was questioned without the assistance of counsel. "The right to counsel recognized in Miranda is

sufficiently important to suspects in criminal investigations, * * * that it 'requir[es] the special protection of the knowing and intelligent waiver standard.'" Davis v. United States, 512 U.S. 452, 458 (1994) quoting Edwards v. Arizona, 451 U.S. 477, 483 (1981). Nevertheless, "[i]f the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him." Id., citing North Carolina v. Butler, supra at 372-376; see also, United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994).

"As a general matter * * * an accused who is admonished with the warnings prescribed by this Court in Miranda has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one * * *." United States v. Garlewicz, 493 F.3d 933, 936 (8th Cir. 2007), quoting Patterson v. Illinois, 487 U.S. 285, 296 (1988); see also, United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006)("An individual's waiver of * * * Sixth Amendment right to counsel is valid if made voluntarily, knowingly and intelligently."), cert. denied, 549 U.S. 1273 (2007), citing Miranda v. Arizona, supra at 444. Here, we have already determined that the Defendant voluntarily waived his Miranda rights, on both October 27, and January 21. Moreover, both Underhill and Iverson specifically attested that

the Defendant never asked to stop either interview, nor did he ever ask to speak with an attorney. Accordingly, we conclude that the Defendant waived his right to counsel as to both of his statements.

As a consequence, we recommend that the Defendant's Motion to Suppress Statements, Admissions, and Answers, be denied, as without merit.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 25] be denied.

Dated: February 20, 2009         *s/Raymond L. Erickson*
                                 Raymond L. Erickson
                                 CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by**

**no later than March 9, 2009**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 9, 2009**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.